ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 MAY 29 PM 4:19
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| KENT LAMOND SANDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 313-021 |
| ) | |
| JASON MEDLIN, Warden of Wheeler ) | |
| Correctional Facility, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Wheeler Correctional Facility in Alamo, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[1]

---

[1] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

I.  **BACKGROUND**

Plaintiff names the following Defendants in his complaint: (1) Jason Medlin, the Warden at Wheeler Correctional Facility ("WCF"); (2) the Corrections Corporation of America ("CCA"), a private corporation that has contracted to house state prisoners at WCF; and (3) Brian Owens, the Commissioner of the Georgia Department of Corrections ("GDOC"). (Doc. no. 1, pp. 1, 4.) Plaintiff alleges that, on June 22, 2012, he "fell down" while he was working on kitchen detail as a food service worker at WCF, and that his staff supervisor accordingly advised him to visit WCF's medical unit. (Id. at 5.) Plaintiff alleges that he immediately sought medical attention due to "severe back pain" and reports that he was seen at the medical unit and given a "health/activity profile" – which he notes is also known as a "lay-in" – for a period of seven days. (Id.) Plaintiff alleges that his back pain nevertheless continued to escalate, that he began to experience numbness in his left leg and shoulder, and that he thus submitted another health service request form on July 2, 2012. (Id.) Plaintiff alleges that he was then referred to a doctor and given an MRI and a fourteen-day "lay-in." (Id.) Plaintiff alleges that, because his back pain continued to spread "on up to his shoulders," he submitted a third health service request form on January 2, 2013, at which point he was offered Motrin and analgesic balm. (Id.) Plaintiff asserts that he refused to accept the same because he "needed to see a medical doctor, outside of [WCF]." (Id.)

Plaintiff alleges that he filed "three appeals on the issue" with Pat Clark, the Health Care Staff Administrator at WCF, but that each was denied. (Id. at 6.) Notably, although

2

Plaintiff contends that Ms. Clark's denials of his grievances deprived him of his right to adequate medical care (id.), he has not named her as a Defendant in this action. Plaintiff additionally alleges that, in an attempt to "get better medical care" and to inform Defendant Medlin as to the "negligence [Plaintiff] had been receiving from medical," he spoke with Defendant Medlin more than eight times between June 30, 2012, and December 20, 2012. (Id.) Plaintiff alleges that Defendant Medlin advised him that his claims were unjustified and that he saw no need to conduct an investigation as to those claims. (Id.) Plaintiff generally asserts that both Defendant Medlin and Defendant Owens are liable due to their supervisory roles. (Id. at 6-7.)

In his request for relief, Plaintiff seeks an evaluation by CCA's doctors, an evaluation by a GDOC neck and back specialist, and adequate medical care for the duration of his prison term and for the rest of his life upon his release. (Id. at 8.)

## II. DISCUSSION

### A. No Supervisory Liability

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a viable claim for relief against any Defendant.

First, Plaintiff's claim against Defendants is inadequate to the extent that Plaintiff is attempting to hold them responsible for the acts of various named and unnamed doctors and members of the prison staff, against whom Plaintiff directs allegations of deliberate

3

indifference and improper handling of his grievances.² "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*.³ See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that [supervisor] which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

---

²Notably, even if Plaintiff had brought claims for deliberate indifference or improper handling of grievances directly against the prison employees or doctors that allegedly committed those offenses, he fails to state viable claims based on those allegations, as explained infra.

³Of course, private contractors that run prisons, like CCA, do act under color of state law for purposes of § 1983 liability. Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). Nevertheless, as explained herein, the principle that *respondeat superior* is not a cognizable theory of liability under § 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

Here, Plaintiff only mentions Defendants in the caption of his complaint and, later, in the body of his complaint to assert that Defendants are liable for the actions of their employees or subordinates and that, additionally, he had various conversations with Defendant Medlin concerning his claims. (See generally doc. no. 1.) Similarly, Plaintiff fails to allege a "causal connection" between Defendants and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[4] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendants. Accordingly, Plaintiff's complaint is subject to dismissal on that ground alone.

---

[4]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration,* rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

## B. No Deliberate Indifference to Serious Medical Need

Next, even if Plaintiff's complaint were not subject to dismissal for the above reason, such that he had asserted his claims against appropriate individuals, he has failed to state a viable claim for deliberate indifference to his serious medical needs. Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39; Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (noting that the deliberate indifference standard requires a prison official to have disregarded an excessive risk of which he was actually aware).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. Farmer 511 U.S. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere

negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted); see also Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). The Eleventh Circuit has held that to state a viable Eighth Amendment claim, a prisoner must allege that the defendant acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Allegations of mere negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Additionally, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. Smith v. Fla. Dep't of Corrs., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); Adams, 61 F.3d at 1546; Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Here, Plaintiff has failed to satisfy either prong of the requisite two-prong test to show deliberate indifference. First, he has not shown that his back, leg, and shoulder pain constitutes a "sufficiently serious" medical issue that poses a serious and imminent risk to

7

his health. In fact, the totality of his allegations concerning his medical issue is that, as a result of "falling down" while working on kitchen detail at WCF, he now generally suffers from the aforementioned pain. (Doc. no. 1, p. 5.) Critically, Plaintiff has entirely failed to demonstrate that his vaguely explained back, leg, and shoulder pain approaches the level of a serious, imminent, or excessive risk to his health, especially where, as here, he admits to refusing medication intended to alleviate such pain. See Farmer, 511 U.S. at 834; Thomas, 614 F.3d at 1304.

Plaintiff has also failed to satisfy the second prong of the requisite test, in that he has failed to show that Defendants – or, for that matter, any prison employees or doctors – subjectively acted with "deliberate indifference" to his health or well-being. In fact, the allegations set forth in Plaintiff's complaint indicate just the opposite: according to Plaintiff, on the occasions that he visited the medical unit or submitted a health services request form, he was seen by a doctor, given a "health/activity profile," provided with medication, and administered an MRI. (Doc. no. 1, p. 5.) Given the abundance of treatment with which Plaintiff has been provided, it is clear that Plaintiff's complaints of pain and requests for medical treatment were not met with deliberate indifference.[5] If anything, Plaintiff's allegations concerning his medical needs – that he needs to see an outside doctor and a back and neck specialist – exhibit nothing more than mere disagreement with the chosen course

---

[5]Likewise, Defendant Medlin's alleged comments to Plaintiff that Plaintiff's claims concerning medical negligence were unjustified and that an investigation was unnecessary seem entirely appropriate given the circumstances described, and do not themselves give rise to a viable § 1983 claim. (Doc. no. 1, p. 6.)

8

of treatment, which does not give rise to a valid claim for deliberate indifference. Smith, 375 F. App'x at 910. In short, Plaintiff has failed to satisfy either prong of the requisite test to state a viable claim for deliberate indifference, and such a claim would thus fail even if he had asserted that claim against appropriate individuals at WCF.

### C. No Due Process Claim for Mishandling of Grievances

Plaintiff's allegation that his grievances were improperly denied, which appears to be solely directed at Ms. Clark, who is not named as a Defendant in this lawsuit, is likewise insufficient to state a cognizable § 1983 claim. (Doc. no. 1, p. 6.) Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (*per curiam*). Therefore, Plaintiff's allegations regarding Ms. Clark's supposedly improper denials of his grievances fail to state a § 1983 claim upon which relief may be granted.[6] See id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that

---

[6]To the extent that Plaintiff intends to assert claims concerning the denial of his grievances against Defendant Medlin based on his conversations with Defendant Medlin – which is altogether unclear from the complaint (see doc. no. 1, p. 6) – the same rationale applies, and such allegations are accordingly insufficient so support a viable claim for relief.

9

Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 29th day of May, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE